## MARLENE MONROE v. STATE OF MARYLAND

[No. 972, September Term, 1981.]

*Decided June 2, 1982.*

The cause was submitted on briefs to GILBERT, C. J., and MOYLAN and WEANT, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Claudia A. Cortese, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Diane G. Goldsmith, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Jack Lesser, Assistant State's Attorney for Baltimore City,* for appellee.

GILBERT, C. J., delivered the opinion of the Court.

Marlene Monroe, the appellant, was convicted at a non-jury trial in the Criminal Court of Baltimore (Dorf, J.), of theft and of trespass on posted property (Md. Ann. Code

art. 27, § 576). She was committed to the custody of the Division of Correction for eighteen months for the theft, together with a consecutive three-month commitment for trespassing. On appeal she contends:

1. Her actions did not fall within the conduct prohibited by section 576.
2. The evidence was insufficient to sustain her convictions.

The record reveals that at about 2 p.m. on Monday, October 27, 1980, Michael Carmichael changed from his street clothing to his work clothes. He put the street clothing in his locker in the men's locker room on the eighth floor of the University Hospital where he was employed. He left two twenty dollar bills in a pocket of the trousers that he placed in the locker. There was a jar of grease sitting on a shelf in the locker. A short time later, one of his fellow workers, Morris Phillips, who was in the locker room, heard a noise. Phillips testified that he saw the appellant in the vicinity of Carmichael's locker. The appellant brushed by him stating she had had to use the bathroom.

Phillips then notified Carmichael of the occurrence. Carmichael returned to the locker room where he found his locker broken open, the forty dollars missing, and the jar of grease spilled. After looking for appellant on the eighth floor of the hospital, Carmichael and Phillips took the elevator to the ground floor corridor where they espied her. At their request, the appellant was arrested by security guard Donald Boyd.

Boyd related to Judge Dorf that the appellant, when arrested, had two twenty dollar bills in her possession, and she was wiping grease off her hands. Boyd also told the court that the locker room was a restricted area with signs posted that read that the entry by unauthorized personnel was prohibited.

Appellant admitted being on the eighth floor where, she said, she was visiting a sick friend. She denied, however, taking the forty dollars, being in the locker room, or even

seeing Phillips prior to the arrest. She also denied that Boyd found the money in her possession or that she was wiping grease off her hands at the time of her arrest.

## I. Forbidden Course of Conduct

In *In re Appeal No. 631, Term 1977,* 282 Md. 223, 226-27, 383 A.2d 684, 685-86 (1978), the Court of Appeals said:

"A mere trespass to real property is not a crime at common law unless it amounts to a breach of the peace. Thus, criminal trespass is for the most part a statutory creation. The Maryland statutory scheme concerning criminal trespass, involves both public and private property and deals with various situations.

Article 27, § 576, provides that anyone who '*enters* or trespasses' on property conspicuously posted against trespassers is guilty of a misdemeanor. Article 27, § 577, makes criminal either *entering* or *remaining* on privately owned property after being notified by the owner not to do so.

Article 27, § 577A, on the other hand, which is concerned generally with public lands and buildings, is more narrow in its scope than the provisions relating to posted property and private property. Although the statute makes 'refusing or failing to leave a public building or grounds . . . upon being requested to do so by . . . [an] authorized employee' a criminal offense, there is no provision whereby mere *entrance* into a public building, following a prior notification, amounts to a criminal trespass under § 577A." (Citations omitted.)

Specifically, Article 27, § 576, states, *inter alia:*[1]

"Any person who enters or trespasses on any prop-

---

[1]. The statute contains additional language that is pertinent only to open fields and forests. Although both parties discussed that portion of the statute, we consider it inapposite to the instant case.

erty which is *posted against trespassers in a conspicuous manner* is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $500, or imprisonment not exceeding three months, or both." (Emphasis supplied.)

The question here is whether the locker room area was "posted against trespassers in a conspicuous manner." We note that at the trial, Carmichael testified:

"Q. There is a sign in the corridor?

A. Right.

Q. It says a restricted area?

A. Yes.

Q. Does it say anything else to your knowledge?

A. No. You can not — Restricted area. You can't come past without a pass of some kind, authorization or badge or something."

The questions put to and answered by Boyd show:

"Q. What, if any, signs are on the door leading to the locker or bathroom?

A. There are quite a few signs. One states that it is — unauthorized personnel keep out. When you go further back towards the men's locker room it says males only. Then you have another sign that says CSS employees only. That stands for Central Sterile Supply.

Q. So should a person who is not working for the hospital be in that locker room without a pass or permission from someone at the hospital?

A. A person who is not an employee of CSS has no business there whatsoever.

Q. And are these signs — Where are the signs located?

A. One is located at the door leading to CSS.

Q. So would someone entering the door be able to see that sign as they were going into it?

A. Correct."

The area in which the appellant was seen by Phillips was described by Carmichael as a "restricted area." He said that in order to enter the area a person needed "a pass of some kind, [an] authorization or badge." It is evident that the hospital administrators desired that only certain personnel be permitted to enter the restricted area.

We observe that Boyd described three signs observable on the approach to the area. The first read: "unauthorized personnel keep out," the legend on the second was: "males only," and the third said: "CSS employees only." The appellant, of course, was not an authorized person, she patently was not a male, and she most certainly was not a CSS employee. We think it would defy common sense to conclude that appellant did not know that her presence in the area was prohibited.

Although Section 576 refers to "property which is posted against trespassers," we are of the view that the mere failure of the signs to use the precise word "trespassers" cannot be used by appellant as a license to frustrate the purpose of the statute.

> "In the final analysis, in construing any statute requiring construction, courts must consider not only the literal or usual meaning of words, but their meaning and effect in light of the setting, the objectives and purposes of the enactment, with the real intention prevailing over the literal intention even though such a construction may seem to be contrary to the letter of the statute." *State v. Fabritz,* 276 Md. 416, 422, 348 A.2d 275, 279 (1975), *cert. denied,* 425 U.S. 942 (1976).

We hold that conspicuously posted signs indicating that the presence of unauthorized persons is proscribed satisfies the statute. The use of the precise wording, "No trespassing" or "Trespassers forbidden" is not mandated. It is enough if the message on the posted signs warns against trespassing irrespective of the wording employed.

## II. Sufficiency of the Evidence.

Appellant asserts:

"Neither Phillips nor Carmichael saw Appellant break into the locker and take the forty dollars at issue. The only evidence which in any way linked Appellant to the offenses was the testimony of Phillips and Officer Boyd that Appellant was in the locker room area and was later seen wiping 'something greasy' off her hands and that she was apprehended with two twenty dollar bills on her person."

This Court, in *Metz v. State,* 9 Md. App. 15, 23, 262 A.2d 331, 335 (1970), said:

"We think that the test as to the sufficiency of evidence may be stated as follows:

To be sufficient in law to justify a conviction, the admissible evidence adduced must show directly, or circumstantially, or support a rational inference of, the facts to be proved from which the trier of fact could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged.

In short, we feel that the test for sufficiency is the same whether the evidence be direct, circumstantial, or provided by rational inferences therefrom." (Footnote omitted).

Judge Dorf remarked in summing up the evidence presented in the instant case:

"No question when the officer arrested her she had two twenty dollar bills on her. She denies the fact of the twenty dollar bills. Denies the fact there were two twenty dollar bills. Denies the fact she was ever in the room, ever saw the person named Mr. Phillips.

It's a matter of credibility of the various witnesses. Based on the credibility and believability of

the witnesses, I find the defendant guilty beyond a reasonable doubt of 33, theft, and guilty of 34, trespassing."

The evidence was sufficient. The issue raised by appellant is utterly devoid of any merit whatsoever.

*Judgments affirmed.*
*Costs to be paid by appellant.*