## THURSTON EVERETT METZ *v.* STATE OF MARYLAND

[No. 274, September Term, 1969.]

*Decided February 18, 1970.*

16

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Robert Anthony Jacques* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Robert S. Rothenhoefer, State's Attorney for Frederick County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Thurston Everett Metz (appellant) was convicted at a court trial in the Circuit Court for Frederick County of assaulting his wife, Viola Marguarette Metz, with intent to maim, disfigure or disable her. He presents questions relating to (1) the testimony of a wife against her husband in criminal proceedings under the provisions of Md. Code, Art. 35, § 4; and (2) the sufficiency of circumstantial evidence to sustain a conviction.

## (1)

Viola Marguarette Metz, conceded by the State to be the legal wife of appellant, called by the State and being duly sworn, declined to testify against her husband and was excused, the court finding that she had an absolute right to refuse to testify. The State then adduced, through the testimony of Trooper Roger Miles of the Maryland State Police, that about 7:30 P.M. on 31 December 1968 he received a telephone call from appellant who said that "he was having a New Year's party with his wife and that she had picked up a shotgun and he had tried to take it away from her and he related to me that she got shot." Miles dispatched an ambulance to appellant's home and Trooper First Class Carl R. Harbaugh and Sergeant Major John E. Koontz went to the scene. They arrived at the Metz home in about 15 minutes. Harbaugh testified that appellant admitted them. "Mrs. Metz was lying in a doorway between the kitchen and the living room and a large pool of blood was by her right arm by her body. * * *." Harbaugh said that she was able to talk. Objection was made and sustained as to what she

said. It was elicited that appellant was present, standing "right beside" the officer and above Mrs. Metz. Harbaugh continued, "Well, in the corner of the doorway where Mrs. Metz was lying on the floor was a 12 gauge shotgun. The gun was cocked and had a spent shell in the chamber. Mrs. Metz's arm was badly mutilated at the elbow. She had a large knot in the center of her forehead and her nose was scratched and bleeding and her face and arm was just generally covered with blood. We asked her what had occurred and she stated that . . . ." Defense counsel objected. The court asked, "On what grounds if this is in the presence of the defendant if at the time of the shooting she was telling what occurred. Isn't this part of the *res gestae?*" Defense counsel replied, "Your Honor, I am objecting on the grounds that Mrs. Metz has exercised her right not to testify against her husband and by allowing this statement in the Court will be allowing her to testify indirectly when she has refused to testify for the record." The court said, "She elected at the time that she made the statement. She didn't exercise her privilege at that time. Objection is overruled." The officer continued, "Mrs. Metz stated she didn't do it and at this time Mr. Metz said for her to tell the truth and she said she would later."

Appellant claims that the admission of the wife's statements was error, relying on Code, Art. 35, § 4. He argues that to allow the wife's statements in evidence through the officer, in the light of her refusal to testify, defeats the entire purpose of the statute. The statute provides, in pertinent part:

> "* * * In all criminal proceedings the husband or wife of the accused party shall be competent to testify; but in no case, civil or criminal, shall any husband or wife be competent to disclose any confidential communication made by the one to the other during the marriage, nor shall the husband or wife be compelled to testify as an adverse party or witness in any crim-

inal proceeding involving his or her spouse, except when such proceedings involve the abuse of a child under sixteen years pursuant to § 11A of Article 27 of this Code, as amended from time to time; * * *."

The statute clearly provides that in criminal proceedings, a husband or wife:

1) *shall* be competent to testify, except
   a) neither shall be competent to disclose any confidential communication made by the one to the other during marriage (which is also applicable to civil proceedings);
2) *shall not* be compelled to testify as an adverse party or witness, except
   a) when the proceedings involve abuse of a child as specified.

Appellant does not contend that his wife was not competent to testify and, of course, it is clear that she was. Even if the challenged statements be considered as a communication made by the wife to the husband, they were not confidential since they were made in the presence and hearing of third parties. *Mulligan v. State,* 6 Md. App. 600. See *Gutridge v. State,* 236 Md. 514. But it is equally clear that she could not be compelled to testify against her husband as the proceedings did not involve the abuse of a child. Mrs. Metz invoked her statutory right not to testify and it was honored. We construe the statute to mean exactly what it says, that a husband or wife shall not be compelled *"to testify* as an adverse party or witness." Mrs. Metz was not compelled to testify and there was therefore no error. We are not persuaded that we should otherwise construe the specific and unambiguous language of the statute or convinced that we have the power, in any event, to depart from what we believe to be the clear legislative intent. We do not find that it was the legislative intent to exclude statements, otherwise ad-

missible, voluntarily made by one spouse to police officers, simply because that spouse refuses to testify against the other. We hold that Code, Art. 35, § 4 does not preclude the admission of the challenged statements.

Appellant also argues that even if the statute is not applicable, the statements were inadmissible. He asserts that the trial court ruled them admissible as part of the *res gestae* and urges that they were not. We do not find from the record that this point was tried and decided below. Appellant's objection was on the specific and sole ground that to admit the statements would have the effect of compelling the wife to testify. The court's ruling was on consideration of this ground advanced by appellant, even though it may have thought, as indicated by its question, that they were part of the *res gestae*. Since whether they were part of the *res gestae vel non* was not tried and decided below, that point is not properly before us. Maryland Rule 1085. In any event we think the statement that she did not do it was part of the *res gestae*. See *Hall v. State,* 5 Md. App. 599. And if the statement to the effect that she would describe the facts and circumstances of the shooting and battery later was not part of the *res gestae* and was admitted in error, its admission, in the circumstances, was harmless.

### (2)

The thrust of appellant's contention that the evidence was not sufficient to sustain the conviction is that the evidence was solely circumstantial. The test of the sufficiency of the evidence has been established as being whether the evidence either shows directly, or supports a rational inference of, the facts to be proved, from which the trier of fact could fairly be convinced beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Williams v. State,* 5 Md. App. 450. There has come to be impressed upon this rule, that when guilt is based *solely* upon circumstantial evidence, the circumstances, taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or the-

ory of innocence. We traced the history of this language in *Nichols v. State,* 5 Md. App. 340. We found that language to that effect appeared in the Memorandum for Reargument in *Edwards v. State,* 198 Md. 132, 157:

"If we assume that circumstantial evidence, or all the evidence of any kind, must 'exclude to a moral certainty every other reasonable hypothesis than that of guilt,' this assumption does not change the result in the instant case—and does not furnish any 'definite rule for the appraisal of circumstantial evidence.' "

In *Shelton v. State,* 198 Md. 405 the court stated the general test for sufficiency of the evidence and added, at 412: "Before a verdict of guilty is justified, the circumstances, taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence." But in *Vincent v. State,* 220 Md. 232, 236-237, the Court made clear that this language is impressed upon the general test only when guilt is based solely upon circumstantial evidence. See *Brown v. State,* 222 Md. 290, 296 and *Glaros v. State,* 223 Md. 272, 281.

Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. We said in *Nichols v. State, supra,* at 350:

"Circumstantial evidence alone is sufficient to support a verdict of guilty (except for the crime of treason and, in some jurisdictions, perjury) or it may be used in conjunction with direct evidence. It may corroborate other testimony and may be used to prove any element of the crime, such as the *corpus delicti* or the criminal agency of the accused.

"The law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of a fact may

be inferred. No greater degree of certainty is required when the evidence is circumstantial than when it is direct, for in either case the trier of fact must be convinced beyond a reasonable doubt of the guilt of the accused."

We quoted 3 *Wharton's Criminal Evidence* (12th Ed. 1955) § 980, p. 477:

"[C]ircumstantial evidence need not be such that no possible theory other than guilt can stand. * * * It is not necessary that the circumstantial evidence exclude every possibility of the defendant's innocence, or produce an absolute certainty in the minds of the jurors. The rule does not require the jury to be satisfied beyond a reasonable doubt of each link in the chain of circumstances relied upon to establish the defendant's guilt." 5 Md. App. at 351.

And we pointed out:

"While it must afford the basis for an inference of guilt beyond a reasonable doubt, it is not necessary that each circumstance, standing alone, be sufficient to establish guilt, but the circumstances are to be considered collectively." 5 Md. App. at 351.

We are constrained to conclude that the language impressed upon the general test for the sufficiency of the evidence when the evidence is solely circumstantial does not, in fact, refine the general test. We believe that there is only a semantic and not a substantive distinction and that the test has the same denotative meaning with or without the additional language. We feel that evidence which does not show directly the fact to be proved but which supports a "rational inference" of the existence of that fact, includes "circumstantial evidence" as inherent in the definition of circumstantial evidence. Thus to say that "before a verdict of guilty is justified, the cir-

cumstances, taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence," is merely to paraphrase, in practical application, the statement that the evidence must show the facts to be proved from which the trier of fact could fairly be convinced beyond a reasonable doubt of the defendant's guilt of the offense charged.

We think that the test as to the sufficiency of evidence may be stated as follows:

> To be sufficient in law to justify a conviction, the admissible evidence adduced must show directly, or circumstantially, or support a rational inference of, the facts to be proved from which the trier of fact could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged.

In short, we feel that the test for sufficiency is the same whether the evidence be direct, circumstantial, or provided by rational inferences therefrom.[1]

As the instant case was tried without a jury, the clearly erroneous rule, Md. Rule 1086, is applicable in applying the test of the sufficiency of the evidence. In determining whether or not the trial judge was clearly wrong, we are bound by the rules that the weight of the evidence and the credibility of the witnesses were matters for him and not this Court; he did not have to believe the explanations or denials of appellant. *Nichols v. State, supra,* at 351 and cases therein cited.

In rendering its verdict the trial court found the tes-

---

1. We note that in *United States v. Ragland,* 306 F. 2d 732 (4th Cir. 1962) cert. den. 83 S. Ct. 504, the Court said, noting that the Government relied on circumstantial evidence, "[W]hich type of evidence is, of course, sufficient to support the verdict, although it does not exclude every reasonable hypothesis consistent with innocence," citing *Holland v. United States,* 348 U. S. 121, 139 and *Moore v. United States,* 271 F. 2d 564, 568 (4th Cir. 1959).

And see *Shockley v. State,* 218 Md. 491 and *Tasco v. State,* 223 Md. 503 in which the general test was applied by the majority although it appeared to one member of the Court in dissent that the evidence was circumstantial.

timony of the witnesses produced by the State to be "entirely credible and worthy of belief" and the testimony of appellant to be incredible. It found as a fact that appellant assaulted and beat his wife [2] and that he shot her with the intent to maim, disfigure or disable her. We find from our review of the transcript that there was evidence before the court, which it found to be credible, be it direct, circumstantial, or provided by rational inferences therefrom, sufficient to support, beyond a reasonable doubt, its factual findings. They were supported by the physical condition of the victim and the circumstances under which the police found her, appellant and the shotgun with a spent shell in the chamber. There was evidence of conflicting versions given by appellant to the police—he said at one time he was in the kitchen near the living room door when his wife fired the gun; another time that he was in the living room, his wife had the gun and he heard a shot; another time that Mrs. Metz said "Let's celebrate New Year's" and shot herself in the arm; when arrested the next day, after the police further talked to Mrs. Metz, he gave the police a torn plaid shirt, which he stated was the shirt that he had on at the time of the shooting [3] and "that he had the shotgun and his wife was struggling with the shotgun and the shotgun went off." At the trial he testified that he accidentally shot his wife after she had fallen on the floor, that he did not change his clothes after the shooting and that he had not been wearing the shirt he gave the police. There was evidence that the facial injuries of the victim could not have been self-inflicted but were the result of a severe beating. There was also evidence that the shotgun wound could not have been self-inflicted; that it had been fired downward at an angle of about 45 degrees to the floor at a distance of one to four feet from the floor. There were no visible blood stains on appel-

---

2. The court held that the offense of assault and battery merged into the conviction of assault with intent to maim.

3. When the police arrived at the scene they observed that appellant was dressed in a light colored shirt.

lant's person. The court expressly found that the shooting was not accidental, giving in some detail its reasons therefor, based on the evidence before it. The factual findings of the court established the *corpus delicti* of the offense and the criminal agency of appellant. We hold that the court was not clearly erroneous in its judgment on the evidence.

*Judgment affirmed; costs to be paid by appellant.*