## ALFRED DOVE, JR. *v.* STATE OF MARYLAND

[No. 457, September Term, 1980.]

*Decided December 16, 1980.*

The cause was argued before GILBERT, C. J., and MELVIN and WILNER, JJ.

*Clarence W. Sharp,* Assigned Public Defender, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Stephen Savage, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

Appellant was convicted by a jury in the Circuit Court for Montgomery County of second degree murder and use of a handgun in the commission of a felony, for which he was given prison sentences totaling 45 years. In this appeal, he makes the following arguments:

"I. The evidence presented was not sufficient to support Appellant's convictions of second degree murder and use of a handgun in the commission of a felony.

II. The conclusions of the ballistics expert, William Welch, were not admissible without demonstrating the comparisons which led him to his conclusions and without conducting chemical tests for any changes in the bullet.

III. The State failed to establish a proper chain of custody of the coat allegedly worn by the victim to establish the distance of the firing based on burn marks.

454

IV. The trial court erred in failing to instruct the jury that (1) Appellant should be found not guilty if the State failed to sustain its burden of proof beyond a reasonable doubt, and (2) the burden was on the State to prove beyond a reasonable doubt that the circumstances were inconsistent with or such as to exclude every reasonable hypothesis or theory of innocence.

V. The verdict of the jury was unduly influenced and coerced by the trial court's advice to them at 11:00 p.m. that they would be kept overnight if a verdict was not reached within fifteen minutes and in responding to the single juror's question concerning a new trial if the jury was deadlocked.

VI. The trial court erred in compelling the Appellant to submit to having his appearance and hairstyle altered before trial."

We have examined the record carefully and find that none of these contentions have any merit. Indeed, except for the last point raised, none require extended discussion. We find, with respect to the first five issues:

(1) Although much of the evidence was of a circumstantial nature, it was clearly sufficient to permit a rational jury to conclude, beyond a reasonable doubt, that at some point between 5:30 and 6:00 p.m. on March 7, 1979, appellant unlawfully shot and killed Elizabeth Hakala with a .38 caliber revolver as she walked along Howard Chapel Road, and that the shooting, under the circumstances, constituted second degree murder. It therefore also constituted the unlawful use of a handgun in the commission of a felony.

The evidence showed that, at about 5:20 p.m., while proceeding home from a trip to Frederick, appellant accidentally drove the car he was operating off the road. Appellant abandoned the vehicle and ventured off on foot, a

fair inference being that he took with him a handgun that had been in the car. This much was established from the testimony of his companion and passenger, Barbara Johnson. Shortly thereafter, a dark green 1969 Pontiac Catalina station wagon was stolen from in front of a carry-out store located a mile and a half away, at the intersection of Routes 97 and 650. A man fitting appellant's general description was seen at the store at that time.

The killing took place about 8 miles from the store — directly along Route 97. Before she died, the victim told the police that a black male (appellant being a black male) pulled up in a large dark car and told her to get in, that she refused, and that he then shot her and drove away. Later that evening, at about 10:37 p.m., Officer Robert Brown, of the Frederick Police Department, spotted the stolen station wagon and began to follow it. After a while, the driver of the wagon increased his speed, in an apparent attempt to escape from Brown, but he was apprehended after he collided with another vehicle. The driver turned out to be appellant, and in the car was a .38 caliber handgun with one spent casing. Ballistics tests revealed that the bullet that killed Mrs. Hakala was fired from that weapon.

That was enough to support the convictions. *See Metz v. State,* 9 Md. App. 15 (1970).

(2) The complaint made here to the testimony of Sergeant Welch — that he failed to conduct any test to determine whether the bullet recovered from the victim's body had been chemically changed as the result of its contact with her body fluids — was not raised below and we shall therefore not consider it on appeal. Maryland Rule 1085. We have, in any event, read Sergeant Welch's testimony in its entirety, and find no reversible error in its admission.

(3) The State did establish a sufficient "chain of custody" with respect to the victim's coat. Appellant's argument to the contrary is absolutely groundless.

(4) Appellant complains of two alleged errors in the jury instructions, both being errors of omission rather than commission. In neither case did he take any exception to the court's charge or request additional or clarifying

instructions. In short, he failed to bring his belated complaints to the attention of the trial court, when effective relief could have been granted; and he offers no excuse for this failure. *See Brown v. State,* 14 Md. App. 415, *cert. den.,* 265 Md. 736 (1972).

The court very clearly and adequately explained to the jury that appellant was presumed to be innocent and that it was incumbent upon the State to prove him guilty — to prove each and every element of the crime, including his criminal agency — beyond a reasonable doubt. Unlike the situation in *State v. Hutchinson,* 287 Md. 198 (1980), upon which he relies, there was no confusion, or serious potential for confusion, in these instructions.

In *Hutchinson* the jury could reasonably have interpreted what the court said as not allowing for a verdict of acquittal but in effect requiring a conviction. Both this Court and the Court of Appeals concluded that such a possibility was real enough and serious enough to require that the issue be addressed, even though no exception was taken below. We do not read *Hutchinson* as flatly requiring an affirmative instruction that the jury must return a verdict of not guilty if the State fails to sustain its burden of proof where such a requirement is clearly implicit from other instructions given. *Hutchinson* merely held that instructions which implied the opposite — that the jury could *not* find the defendant not guilty — amounted to plain error under Maryland Rule 757h and should be addressed on appeal.

Appellant's second complaint concerning the court's instructions — that the State's burden was to prove beyond a reasonable doubt that the circumstances shown were inconsistent with or excluded every reasonable hypothesis of innocence — is answered in full by *Metz, supra.* We made clear there that the burden with respect to circumstantial evidence was no different than with respect to direct evidence, that "the test for sufficiency is the same whether the evidence be direct, circumstantial, or provided by rational inferences therefrom." 9 Md. App. at 23. Upon the doctrine which we announced and applied in *Metz,* it is clear that the instruction which appellant says should have been

given despite his failure to request it would have been an incorrect one. It therefore would not amount even to error, much less plain error, to omit such an instruction.

(5) The record lends no support whatever to appellant's assertion that the court unduly influenced the jury's verdict. The court merely asked whether the jury desired to deliberate a little longer or retire for the evening, to which no objection was made. Nor did appellant object when the court, quite properly, declined to answer a juror's question as to what would happen if the jury deadlocked.

The sixth complaint requires some elaboration. In addition to the charges emanating from the shooting of Mrs. Hakala, appellant was also charged, in a separate indictment (No. 22391), with the rape and shooting of another person later in the evening of March 7, 1979. Those charges were tried separately, but certain pretrial motions were filed that affected both cases. One of these was a motion by the State to compel appellant to restore his tonsorial appearance to what it was at the time of his arrest. Specifically, it was alleged (and, at a pretrial evidentiary hearing held on November 16, 1979, adequately established) that, at the time of his arrest in March, appellant had a short Afro bush — hair length of a half-inch to an inch — and a goatee, but that, in the intervening months, he had (1) allowed his scalp hair to grow to a much larger Afro of three to four inches, (2) shaved his goatee, and (3) allowed his mustache to grow larger.

The State, anxious to conduct a line-up prior to trial, contended that appellant's "changed appearance will unfairly affect the ability of any witness to make a pre-trial identification in the line-up procedure." The court agreed, and, at the conclusion of that phase of the pretrial hearing, announced that it would sign an order requiring appellant (1) to get a haircut and mustache trim and thus restore his scalp and lip hair to the length and style existing at the time of his arrest, and (2) to do the best he could to grow a beard.[1] It directed the State to prepare and submit a specific order.

---

1. Trial in No. 22391 (the rape and other shooting) was scheduled to begin December 3, 1979 — less than three weeks hence.

The docket shows that such an order was signed on November 19, 1979, as paper No. 129, although neither the original order nor a copy of it is included in the record before us. The docket entry is quite detailed, however, and describes the order thusly:

"Order of Court (Fairbanks, J.) that the Defendant be compelled and ordered to refrain from personally cutting or shaving any head, scalp, mustche [sic] or chin hair from this date or until the conclusion of the trial or trials in Criminal numbers 22391 and 22586 which are set for December 3 and 27, 1979 respectively and that the Defendant be compelled to refrain in all respects from personally changing or altering the style of his head, facial or chin hair and that the Defendant allow his chin hair to grow, unshaved, until the conclusion of the December 27, 1979 trial in Criminal 22586 and that the Defendant only permit and allow an authorized barber, employed by or at the direction of the Maryland Department of Corrections or the Montgomery County Detention Center to shave, cut or trim the head, facial and chin hair of the Defendant at such time and place, under the supervision of Detective Bernard Forsythe of the Montgomery County, Maryland Police Department, Crimes Against Persons Division, and that once shaven and trimmed by said authorized barber and under the supervision of Detective Bernard Forsythe, the Defendant refrain from further cutting, shaving, trimming or changing his appearance with respect to his facial and scalp hair until the conclusion of all pre-trial identification proceedings and trial in the above captioned cases, filed in Criminal 22391."

The effect of this order, as indicated by the docket entry, extended beyond the line-up desired by the State, but included the trials as well. Although the record does not

indicate one way or the other whether the order was implemented, we shall assume that it was, and that appellant's tonsorial features were in fact changed (or restored) in accordance with it prior to trial.

With respect to *this* proceeding, appellant was identified in court, at trial, by Miss Johnson (his companion on the trip to and from Frederick earlier in the day) and by several of the police officers who arrested him in Frederick later that night. No objection was made to any of these identifications, and there is no indication in the record that they were in any way facilitated by the forced restoration of appellant's facial appearance. Nor is there any suggestion that the in-court identifications were influenced by any pretrial line-up confrontations, or even that the identifying witnesses had attended such a line-up. Nevertheless, because they did make an in-court identification, we cannot presume that the order (or its implementation) was entirely without effect — in other words, if erroneous, that the error was harmless beyond a reasonable doubt. We therefore must address the issue.

Addressing it, however, we find no merit in it. As we pointed out in *Doye v. State,* 16 Md. App. 511, 524, *cert. den.,* 268 Md. 747 (1973), the privilege against self-incrimination, which is the privilege asserted here, "has evolved to protect only communicative or testimonial statements." It does not serve to exclude the defendant's body as evidence. *Holt v. United States,* 218 U.S. 245 (1910). Upon this premise, criminal defendants have been required to exhibit, or refrain from altering or concealing, a wide variety of identifying characteristics, ranging from voice, to blood, to handwriting, to limbs, or other body parts.

This has also been extended to facial hair. Certainly, requiring a defendant to get a haircut or to shave a mustache or grow a beard is no more intrusive than requiring him to give up some blood, or ungergo skin scrapings, or to disrobe; and such orders have been sustained wherever challenged. *See People v. Strauss,* 22 N.Y.S.2d 155 (City Ct. 1940); *People v. Vega,* 370 N.Y.S.2d 429 (Sup. Ct. 1975), *rev'd on other grounds* 379 N.Y.S.2d 419 (App. Div. 1976); *People v.*

*Delgado,* 412 N.Y.S.2d 254 (Sup. Ct. 1978); *Ross v. State,* 182 N.E. 865 (Ind. 1932). *Cf. Smith v. United States,* 187 F.2d 192 (D.C. Cir. 1950), *cert. den.,* 341 U.S. 927 (1951). *Delgado,* indeed, sustained an order compelling a defendant to shave, against attack under both the Fourth and Fifth Amendments. *See also Smith v. State,* 4 Md. App. 146 (1968), where we found no prejudicial error in requiring the defendant to attend trial with shaggy, unkempt hair in the face of his desire to get a haircut.

> *Judgments affirmed; appellant to pay the costs.*