659 A.2d 1282

**John Michael MITCHELL**

v.

**STATE of Maryland.**

**No. 112, Sept. Term, 1994.**

Court of Appeals of Maryland.

June 20, 1995.

Margaret L. Lanier, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

We issued a writ of certiorari in this case to consider whether the trial judge abused his discretion in refusing to answer a question from the jury, posed during deliberations, regarding the consequences of a "hung" jury. We shall hold that he did not.

I

John Michael Mitchell, the petitioner, was charged with offenses stemming from the burning of his former girlfriend's residence. He entered pleas of not guilty and not criminally responsible (NCR). From October 19 until October 22, 1992, Mitchell was tried before a jury in the Circuit Court for Baltimore County.

After the jury was instructed and counsel made their closing arguments, the jury retired to deliberate. After nearly five hours of deliberation, the jurors sent the following note to the court:

"If the decision of the group is a hung jury, will the case be dismissed and John Mitchell walk, or will he be retried?"

The court and counsel then engaged in the following colloquy:

"[*The Court:* ] Now, in light of that, I don't feel that I should answer it. I feel that I should probably give them an *Allen* charge.

"[*Prosecutor:* ] That's fine, Judge.

"[*Defense Counsel:* ] Well, I understand that, Your Honor, and I think that goes to the issue of going back to deliberate, but I think it's not improper to let them know that if this case is a mistrial at some point or a hung jury, that he would not walk.

"[*Prosecutor:*] I think it's improper to let them know that. It's not relevant at all. It should not be part of their deliberations."

The court agreed with the prosecutor and then addressed the jury:

"Ladies and gentlemen of the jury, you have sent out a question. The question is not going to be answered, it's none of your concern, but I want to give you this instruction again:[1]

"The verdict must be the considered judgment of each of you. In order to reach a verdict, all of you must agree. Your verdict must be unanimous. You must consult with one another and deliberate with a view to reaching an agreement, if you can do so without violence to your own individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. During deliberations, do not hesitate to reexamine your own views. You should change your opinion if convinced you are wrong, but do not surrender your honest belief as to the weight or effect of the evidence only because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict.

"Now, Madam Foreperson, would you take the jurors back to the deliberation room and we'll await your decision."

Fifteen minutes later, the jury rejected Mitchell's NCR defense and convicted him of five counts of attempted first degree murder and single counts of arson, harassment and telephone misuse. The court then sentenced Mitchell to a period of incarceration and he appealed that judgment to the Court of Special Appeals. In an unreported opinion, the intermediate appellate court affirmed the judgment of the circuit court.

Mitchell contends that the trial judge's refusal to answer the jury's question about the effect of a "hung" jury was an abuse

---

1. The court had given the jurors substantially the same instruction prior to directing them to begin their deliberations.

of the court's discretion. We disagree, as the question involves a matter that was not appropriate for the jury to consider during deliberations, and because any definitive answer the court could have given would have been speculative.

## II

■ Under Maryland Rule 4–325(a), "[t]he decision to supplement [jury] instructions and the extent of supplementation are matters left to the sound discretion of the trial judge, whose decision will not be disturbed on appeal in the absence of a clear abuse of discretion." *Howard v. State,* 66 Md.App. 273, 284, 503 A.2d 739, 744–45, *cert. denied* 306 Md. 288, 508 A.2d 488 (1986) (citations omitted). As a general rule, a jury should not be told about the consequences of its verdict—the jury should be focused on the issue before it, the guilt or innocence of the defendant, and not with what happens as a result of its decision on that issue. *E.g., Shannon v. United States,* 512 U.S. ——, —— – ——, 114 S.Ct. 2419, 2422–24, 129 L.Ed.2d 459, 464–67 (1994); *Chambers v. State,* 337 Md. 44, 48, 650 A.2d 727, 729 (1994).

■ We have previously recognized two exceptions to this general rule. First, when a criminal defendant raises an NCR defense, a judge must advise the jury of the consequences of a verdict of NCR when requested to do so by the defendant. *Erdman v. State,* 315 Md. 46, 58, 553 A.2d 244, 250 (1989). In *Erdman* we reasoned

> "that 'the jury has the right to know the *meaning* of [a verdict of not criminally responsible] as accurately as it knows by common knowledge the meaning of [a verdict of guilty and a verdict of not guilty].' "

*Id.* (quoting *Lyles v. United States,* 254 F.2d 725, 728 (D.C.Cir.1957), *cert. denied,* 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958)) (emphasis added, alteration in original). Clearly this exception would not apply to the instant case, as *Erdman* only requires an instruction regarding the consequences of a verdict of NCR, and that instruction was given. Moreover, the reasoning supporting the *Erdman* exception

would not apply in this matter, as the jury clearly already understood the *meaning* of a "hung" jury if not its consequences.

▮ The second exception arises in a capital case when the jury is involved in determining the defendant's sentence. There the defendant is allowed to present information to the jury concerning his eligibility for parole in the event that a life sentence is imposed. *Doering v. State*, 313 Md. 384, 407–12, 545 A.2d 1281, 1292–95 (1988). In *Doering* we opined

· "that a jury seeking to determine the appropriateness of a life sentence will be aided by information correctly describing the legal and practical effects of such a sentence, and that the existence of an appropriate alternative sentence must certainly be considered a relevant mitigating circumstance."

*Id.* at 411–12, 545 A.2d at 1295. As the jury in the instant case was not involved in any way in Mitchell's sentencing, neither this exception nor the reasoning supporting it is applicable. Furthermore, we observe that in capital cases a sentencing jury does not have to be told that if it is "hung" regarding the sentence the court will impose a life sentence. *E.g., Oken v. State*, 327 Md. 628, 642–43, 612 A.2d 258, 265 (1992), *cert. denied*, ―― U.S. ――, 113 S.Ct. 1312, 122 L.Ed.2d 700 (1993).

Two cases addressing a jury's question regarding the consequences of a "hung" jury have been reported in Maryland. In *Leupen v. Lackey*, 248 Md. 19, 234 A.2d 573 (1967), a civil case, the jury asked about the consequences of a deadlocked jury and the court responded with an *Allen* charge. We held that the response was not reversible error. In *Dove v. State*, 47 Md.App. 452, 423 A.2d 597 (1980), the Court of Special Appeals summarily responded to Dove's complaint that his jury had been unduly influenced by stating that

"[the] appellant [did not] object when the court, *quite properly*, declined to answer a juror's question as to what would happen if the jury deadlocked."

*Id.* at 457, 423 A.2d at 600 (emphasis added).

We recently stated that

"[w]ith the exception of death penalty and insanity cases, *the sole function of the jury in a criminal case in Maryland is to pass on whether the defendant is guilty as charged,* a decision based on the evidence presented at trial and the law pertaining to the case."

*Chambers,* 337 Md. at 48, 650 A.2d at 729 (emphasis added). We went on to say that because the instruction Chambers requested[2] would invite the jury to consider punishment, it

"risks distracting the jurors from their designated task, and from their obligation to decide the case based on the evidence and the law."

*Id.* at 53, 650 A.2d at 731.

■ The instant case more closely resembles *Chambers,* where the jury had no *need* for the information the defendant wished the jury to have,[3] than it does *Erdman* and *Doering,* where the jurors *required* the information in order to properly perform their duties. In this case, the jury's only task was determining Mitchell's guilt or innocence. The consequences of a "hung" jury were irrelevant to accomplishing that task and therefore not a proper consideration.

### III

■ Even if the jury's question were proper, the trial judge still properly exercised his discretion in refusing to answer it. As it is up to the State's Attorney to decide whether to retry a defendant after a mistrial, the trial judge could not have *known* what would happen in the case of a "hung" jury. Any

---

**2.** In *Chambers,* the defendant wanted the court to instruct the jury that it could return a recommendation of mercy after finding him guilty of possession of cocaine.

**3.** Indeed, *Chambers,* in discussing the rights of juries that are not included in jury instructions, lists as one of those rights that "the jury . . . may end in deadlock and 'hang[.]' " *Chambers,* 337 Md. at 49 n. 3, 650 A.2d at 729 n. 3.

definitive answer that the court would have given to the jury's question, therefore, would necessarily have been speculative.[4]

In *Erdman, supra* we noted that an instruction regarding the consequences of an NCR verdict generally was required in jurisdictions, such as Maryland, where commitment of the defendant is automatic; however, in jurisdictions where the consequences of an NCR verdict were not mandated, and were therefore uncertain, the instruction was not required. *Erdman,* 315 Md. at 53, 553 A.2d at 247. Applying these observations to the present case, the trial court was not required to instruct the jury on the results of a "hung" jury, because those results were uncertain.

### JUDGMENT AFFIRMED, WITH COSTS.

BELL, Judge, dissenting, in which ELDRIDGE, Judge, joins.

When, after four hours of deliberations, during the course of which it asked two questions pertaining to the petitioner's criminal responsibility, the jury inquires as to the effect of a hung jury, in context, it is obvious that the jury's focus was on an issue within its province to resolve. While the question, on its face, was concerned with an issue outside the jury's area of responsibility, the resolution of that issue had a direct and significant impact on the very issue that jury was required to decide, *i.e.,* whether the petitioner was criminally responsible when the charged offenses were committed. In this case, it is precisely because the jury wished to avoid speculating about the "extraneous" issue that it asked the subject question; the jury was attempting to discharge its responsibility, rather than abdicate it, for want of what it perceived to be necessary

---

4. We recognize that the trial court could have answered the jury's question with an indefinite answer such as "I don't know" or indicated to the jury that the decision of whether or not to retry Mitchell rested with the prosecutor. Such a response, however, would have had the same effect as not answering the question at all—that of leaving the jury uncertain of the consequences of a "hung" jury. As such an indefinite response would have been of no consequence in this matter, we find no merit in Mitchell's argument that one should have been given.

information. Where the very real possibility exists that the failure to answer a question from the jury will, due to jury speculation as to the matter about which inquiry was made, unfairly impact one of the parties,[1] it is not enough for the court to inform the jury that the issue about which inquiry has been made is not a matter for its resolution; in that circumstance, the court must, in addition, answer the question. When it is the defendant who is placed at a disadvantage, to do otherwise creates an unacceptable risk that the jury will resolve the doubt in favor of the State, rather than in favor of the defendant as it is required to do.

There can be no serious question, as the petitioner points out, that the jury was struggling with the question of the petitioner's criminal responsibility. The petitioner having all but conceded that he committed the offenses, criminal responsibility was, in reality, the only issue before the court, as the two notes that the jury sent the trial judge reflect. Thus, the jury's inquiry whether the petitioner would "walk" in the event of a hung jury must be considered and interpreted in that light. The court having instructed the jury as to the effect of a finding of a lack of criminal responsibility, the jury was not concerned about what would happen if it found the petitioner not criminally responsible; rather, it was concerned about what would happen if there could be no agreement on that issue: would, in effect, the petitioner be acquitted if the jury disagreed as to the petitioner's criminal responsibility? Given the unmistakable impression, conveyed by its question, that the jury did not want the petitioner to "walk," a verdict was simply not possible until the jury was satisfied that that would not occur. In other words, a prerequisite to a fair consideration of the only issue in the case was the jury's understanding of the ramifications of being unable to resolve that issue.

---

**1.** It is conceivable that a jury question could be phrased in such a way as to telegraph a bias against the State. Insuring the integrity of the trial process requires that, in that case, as in the case when the adverse impact is on the defendant, the jury not be allowed to proceed uninformed to the fullest extent of the true state of affairs.

While, as I have indicated, the effect of a hung jury ordinarily is not a matter of concern for the jury, under these circumstances, an honest answer to the question was necessary if the jury were to be able to answer fairly the very question which was within its province—the criminal responsibility of the petitioner. I repeat, it is not enough to tell the jury that it is not within its province to consider the effect of a hung jury; the court must also have informed it that it was the State's decision whether to allow the defendant to "walk." By refusing to answer the jury's question and, instead, repeating the modified *Allen* charge, the court ensured the conviction of the petitioner, the very result forecast in the question itself.

The majority asserts that the exception applied in capital cases to permit information concerning a defendant's eligibility for parole in the event of a life sentence to be submitted to the jury is inapposite since, in this case, the jury was not involved in sentencing and, in any event, even a capital jury is not told the consequences of its being "hung." In no case involving the capital sentencing exception has the effect of a hung jury been raised by the jury itself.[2] *See Oken v. State*, 327 Md. 628, 642–43, 612 A.2d 258, 265 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1312, 122 L.Ed.2d 700 (1993), and *Booth v. State*, 327 Md. 142, 153–54, 608 A.2d 162, 167, *cert. denied*, —— U.S. ——, 113 S.Ct. 500, 121 L.Ed.2d 437 (1992). In those cases, on the contrary, the issue was raised by the defendant, who argued that such an instruction was proper since a hung jury is an acceptable outcome of a capital sentencing proceeding. That

---

**2.** The issue was raised by the juries in *Leupen v. Lackey*, 248 Md. 19, 234 A.2d 573 (1967), *and Dove v. State*, 47 Md.App. 452, 423 A.2d 597 (1980); however, neither case satisfactorily answered the merits of the issue, if the issue was analyzed at all. In *Leupen*, the court focused simply upon the adequacy or propriety of the *Allen* charge given. In *Dove*, the defendant failed to object to the court's response to the jury's question. Moreover, *Chambers v. State*, 337 Md. 44, 48, 650 A.2d 727, 729 (1994), is also inapposite. In that case, the issue was whether to instruct the jury in accordance with a defense request for an instruction informing the jury that it could recommend mercy, pursuant to a Maryland Rule.

this Court rejected that argument does not, however, answer the question this case presents. Furthermore, I believe the rationale of *Doering v. State*, 313 Md. 384, 407–412, 545 A.2d 1281, 1292–95 (1988), though not directly applicable, is instructive. Just as "a jury seeking to determine the appropriateness of a life sentence will be aided by information correctly describing the legal and practical effects of such a sentence," so too is a jury concerned about the effects of a hung jury entitled to information, accurately describing the consequences of that judgment, in order properly to perform its duty.

For the foregoing reasons, I reject the majority's suggestion that a truthful, *i.e.*, an accurate, answer, *albeit* one that does not tell the jury definitively and precisely what will happen would have the same effect as not answering the question. While telling the jury that it is the State's responsibility to determine whether to retry the defendant is not the same as telling it that the defendant will not walk in the event of a hung jury, it does give the jury the meaningful information it seeks. I dissent.

ELDRIDGE, J., joins in the views herein expressed.