994 A.2d 948

**Herbert Roosevelt SIDBURY**

v.

**STATE of Maryland.**

No. 86, Sept. Term, 2009.

Court of Appeals of Maryland.

May 12, 2010.

</div>

Brian M. Saccenti, Asst. Public Defender (Elizabeth L. Julian, Acting Public Defender, Baltimore, MD), on brief for Petitioner.

Ryan R. Dietrich, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, Judge.

In the present case, involving a first degree murder conviction, we are called upon to address one question on certiorari, that being:

Did the trial court err in failing to appropriately respond to the jury question: "Judge, if the jury is hung on the degree of murder "first or second," will the defendant go free?"

*Sidbury v. State,* 410 Md. 559, 979 A.2d 707 (2009). We shall hold that the Circuit Court judge did not abuse his discretion in responding, "[t]hat's not an issue for you to concern yourselves with," because the consequences of a hung jury are not a proper consideration for the jury, as we recognized in *Mitchell v. State,* 338 Md. 536, 659 A.2d 1282 (1995).

**Background**

On the morning of November 30, 2006, Herbert Roosevelt Sidbury, Petitioner, was sitting on a bicycle in front of his grandmother's house on Greenleaf Road in Prince George's County, when Kelly Hodge–Grier, a neighbor, returned home. She parked her car in front of her house, and she and Sidbury

had a brief conversation, during which she saw the handle of a gun in his jacket pocket.

When a car driven by the victim, Kevin Hardy, drove up, although Sidbury said "I hope he don't stop," he got off his bike, approached the passenger side of the car, and started talking to Hardy through an open window. Ms. Hodge–Grier overheard Hardy say to Sidbury, "I'm not scared of you or your gun," and Sidbury then pulled the gun out and shot Hardy. After Ms. Hodge–Grier ran into her house, Sidbury shot Hardy a second time and rode away on his bicycle. Hardy was pronounced dead at the scene.

Sidbury was charged with murder and use of a handgun in the commission of a felony and was tried in the Circuit Court for Prince George's County. At the close of all of the evidence, Judge Thomas P. Smith, who presided, instructed the jury on its task, stating "[i]t is your duty to decide the facts and apply the law to those facts,"[1] and also described the

---

1. As noted at oral argument before us, no instruction on the "Jury's Non-concern with Punishment" was provided by the trial judge, nor was it requested by the State's Attorney or defense counsel. One iteration of such an instruction was given by the trial court in *Tripp v. State*, 36 Md.App. 459, 484, 374 A.2d 384, 398, *cert. denied*, 281 Md. 745 (1977), that being:

> In the event that you do find the defendant guilty of any of the crimes, the matter of punishment or penalty is not the responsibility of the jury ... Your job will be done after finding the defendant guilty or not guilty, sane or insane ... If you do find him guilty, the responsibility of punishment is upon this Court ...

(Alterations in original). The instruction suggested by David Aaronson in *Maryland Criminal Jury Instructions and Commentary*, is derived from that articulated in *Tripp:*

> The question of punishment or penalty in the event of conviction should not enter into or influence your deliberations in any way. You should not guess or speculate about the punishment. Your job will be complete after finding the defendant guilty or not guilty. In the event that you find the defendant guilty, the duty of imposing punishment rests solely upon this court. Under your oath as jurors, you should weigh the evidence in the case and determine whether you find the defendant guilty or not guilty based solely upon the evidence and the law on which you have been instructed. Punishment must not be a part of your consideration.

David Aaronson, *Maryland Criminal Jury Instructions and Commentary* § 1.51 (3rd ed. 2009).

elements of first degree murder, second degree murder, and use of a handgun in the commission of a felony. The verdict sheet read:

1) First Degree Murder of Kevin Hardy:

 NOT GUILTY GUILTY

[If your answer is "Guilty," answer Question # 3; if your answer is "Not Guilty," answer Question # 2;].

2) Second Degree Murder of Kevin Hardy:

 NOT GUILTY GUILTY

[If your answer is "Not Guilty," STOP and return your Verdict to the Court; if your answer is "Guilty," answer Question # 3].

3) Use of a Handgun in the Commission of a Felony:

 NOT GUILTY GUILTY

During its deliberations, the jury sent the trial judge a note asking:

Judge: If the jury is hung on the degree of murder (first or second), will the defendant go free?

Judge Smith read the note to counsel and asked for comment:

[Defense Counsel]: The defense suggests that you answer no, which is correct.

[State's Attorney]: Your Honor, that is not—that is not a part of the consideration that they need to come to a decision on. The Court: I will bring them back in and reinstruct them that their function, that I received their note and that I can't answer their note, because that is not their function or determination, that it is up to the court. Their function and determination is to decide what the facts are and apply the law as I have explained it. Any objection to that?

[Defense Counsel]: I would ask for an instruction that they are not obligated to reach a verdict.

The Court: What I will do is read them the instruction which I have not yet, which is the jury's duty to deliberate, criminal instruction 2:01. That's what it's for. Bring the jury in.

[Defense Counsel]: Judge, after you instruct can I make that exception before he goes back out?

The Court: What exception?

[Defense Counsel]: Saying I just want you to tell them no.

The Court: You have made it.

[Defense Counsel]: Okay.

When the jurors entered the courtroom, Judge Smith instructed them as follows:

Ladies and gentlemen, I received your note. That's not an issue for you to concern yourselves with.

The trial judge also gave an instruction at that time concerning the jurors' responsibilities regarding their deliberations,[2] as indicated:

The verdict must be the considered judgment of each of you. In order to reach a verdict all of you must agree. Your verdict must be unanimous. You must consult with one another and deliberate with a view to reaching an agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. During deliberations do not hesitate to reexamine your own views. You should change your opinion if convinced you are wrong, but do not surrender your honest beliefs as to the weight or effect of

---

2. We have referred to this instruction as an *"Allen*-type" instruction, derived from an instruction sanctioned by the United States Supreme Court and given to a deadlocked jury. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). We have previously considered cases involving deadlocked juries and use of *Allen* charges to encourage jurors to reach a verdict, *Leupen v. Lackey*, 248 Md. 19, 234 A.2d 573 (1967), *Kelly v. State*, 270 Md. 139, 310 A.2d 538 (1973), *Burnette v. State*, 280 Md. 88, 371 A.2d 663 (1977), *Goodmuth v. State*, 302 Md. 613, 490 A.2d 682 (1985), *see also Thompson v. State*, 371 Md. 473, 810 A.2d 435 (2002), but that issue is not before us in this appeal.

the evidence only because of the opinions of your fellow jurors or for the mere purpose of reaching a verdict.

Thirty-nine minutes later, the jury found Sidbury guilty of first degree murder and use of a handgun in the commission of a felony.

Sidbury appealed to the Court of Special Appeals, which affirmed in an unreported opinion, holding that "the trial court did not abuse its discretion in declining to discuss with the jury the possible consequences of their failure to agree on a verdict," citing *Mitchell v. State*, 338 Md. 536, 659 A.2d 1282 (1995).

**Standard of Review**

■ Rule 4–325(a), governing instructions to the jury, provides:

> The court shall give instructions to the jury at the conclusion of all the evidence and before closing arguments and may supplement them at a later time when appropriate. In its discretion the court may also give opening and interim instructions.

The decision of whether to give supplemental instructions is within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear abuse of discretion. *Roary v. State*, 385 Md. 217, 237, 867 A.2d 1095, 1106 (2005); *see Lovell v. State*, 347 Md. 623, 657, 702 A.2d 261, 278 (1997) ("Whether to give a jury supplemental instructions in a criminal cause is within the discretion of the trial judge."); *see also Brogden v. State*, 384 Md. 631, 640–41, 866 A.2d 129, 134 (2005); *Smith v. State*, 371 Md. 496, 508, 810 A.2d 449, 456 (2002).

**Discussion**

■ Sidbury argues that the trial judge abused his discretion in refusing to answer "no" to the question presented by the jury, because he was being held without bail and was awaiting trial on a charge of attempted murder, had a prior conviction for first degree assault, and was on probation at the time of the shooting in this case, such that, "[t]here was no

way any judge was going to release [me]." Sidbury relies upon *Erdman v. State,* 315 Md. 46, 553 A.2d 244 (1989), asserting *Erdman* makes clear that when a "non-speculative answer" is possible, a trial judge must instruct the jury on the consequences of a verdict. Sidbury also argues that this Court in *Erdman* recognized that when jurors are concerned that a defendant might go free, the trial judge must instruct the jury so as "to alleviate these potential concerns." Sidbury suggests that *Mitchell,* 338 Md. at 536, 659 A.2d at 1282, contradicts these principal tenets of *Erdman,* and asks us to disregard the underpinnings of our holding in *Mitchell,* because he would not have "go[ne] free," given his prior conviction and pending charge.

The State counters that the trial judge did not abuse his discretion in answering "[t]hat's not an issue for you to concern yourselves with," because *Mitchell,* 338 Md. at 536, 659 A.2d at 1282, makes clear that the consequences of a hung jury are not a proper consideration of the jury. The State further argues that any substantive answer given by the trial judge would have been inappropriate, because the decision to retry a defendant in the event of a mistrial as a result of a hung jury is within the sole discretion of the State's Attorney.

In *Erdman,* we considered whether a defendant was entitled to an instruction that if the jury found him "not criminally responsible," he would be committed to the Department of Health and Mental Hygiene. In the case, David Allen Erdman was tried by a jury in the Circuit Court for Baltimore County for robbery and related offenses and requested an instruction before deliberations ensued, regarding the consequences of a finding that he was not criminally responsible:

> If the defendant is found not criminally responsible, the court will commit the defendant to the Department of Health and Mental Hygiene for institutional inpatient care. In the future, the defendant will be entitled to release from custody of the Department of Health and Mental Hygiene only if this court or a jury finds he will not be a danger to himself or the person or property of another.

*Id.* at 51, 553 A.2d at 246. We determined that although, generally, "the jury has no concern with the consequences of a verdict," the Circuit Court erred in refusing to give the instruction, because, by virtue of a comprehensive statutory scheme in Maryland, commitment of a defendant found not criminally responsible is practically "automatic." *Id.* at 52–53, 553 A.2d at 247. We further noted that a reasonable interpretation of the verdict sheet, containing spaces for the jury to designate "Criminally Responsible" or "Not Criminally Responsible," might lead the jury to conclude that a defendant found to be not responsible for his criminal conduct would "walk out of the court room, not only unpunished but free of any restraint." *Id.* at 57, 553 A.2d at 249. To alleviate such concerns, we reasoned that the instruction was warranted.[3]

In *Mitchell v. State*, 338 Md. 536, 659 A.2d 1282 (1995), subsequent to *Erdman*, we considered whether a trial judge abused his discretion in refusing to answer a question presented by the jury during deliberations remarkably similar to that posed in the instant case. In the case, John Michael Mitchell was charged with attempted first degree murder, arson, harassment, and telephone misuse stemming from the burning of his former girlfriend's residence and entered pleas of not guilty and not criminally responsible. After nearly five hours of deliberation, the jurors sent a note asking:

> If the decision of the group is a hung jury, will the case be dismissed and John Mitchell walk, or will he be retried?

After hearing arguments from counsel, the trial judge told the jury that, "[t]he question is not going to be answered, it's none

---

**3.** In addition to the jury being instructed about the consequences of a "not criminally responsible" verdict in a case involving criminal responsibility, we have indicated that in death penalty cases, the jury serves as the sentencing authority and determines the appropriate punishment. *See Burch v. State*, 358 Md. 278, 285, 747 A.2d 1209, 1213 (2000) ("Unless the defendant has waived a jury sentencing proceeding, the function of the trial court is to impose the sentence returned by the jury."); *see also Grandison v. State*, 390 Md. 412, 440, 889 A.2d 366, 382–83 (2005) (describing the jury's weighing of aggravating and mitigating circumstances in death penalty determinations).

of your concern"[4] and re-instructed the jurors on their duty to deliberate.[5] Fifteen minutes later, the jury rejected Mitchell's not criminally responsible defense and convicted him of all counts.

Mitchell argued that in refusing to answer the question presented by the jury, the trial judge abused his discretion, asserting that "[w]hen the jurors sent a note to the judge inquiring whether Petitioner would 'walk' in the event of a hung jury, there can be no serious doubt that they were disagreeing over the issue of criminal responsibility," and that when the trial judge declined to indulge the jury's question, the jury found him guilty "in order to keep him off the street...." This Court rejected that argument, holding that the Circuit Court did not abuse its discretion, because "the jury's only task was determining Mitchell's guilt or innocence. The consequences of a 'hung' jury were irrelevant to accom-

---

**4.** At the close of all of the evidence, the trial judge had given an instruction involving the jury's non-concern with punishment in the context of a finding that Mitchell was criminally responsible:

The question of punishment or penalty in the event of conviction is no concern of the jury and should not enter into or influence your deliberations in any way. You should not guess or speculate about the punishment. In the event that you do find the defendant guilty and criminally responsible, the responsibility for punishment will be solely upon this Court. You should weigh the evidence in the case and determine the guilt or innocence of the defendant solely upon the basis of such evidence, without any consideration of the matter of punishment.

**5.** Prior to their deliberations, the trial judge had given the jury substantially the same modified *Allen* instruction as given in the instant case and reiterated:

The verdict must be the considered judgment of each of you. In order to reach a verdict, all of you must agree. Your verdict must be unanimous. You must consult with one another and deliberate with a view to reaching an agreement, if you can do so without violence to your own individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. During deliberations, do not hesitate to reexamine your own views. You should change your opinion if convinced you are wrong, but do not surrender your honest belief as to the weight or effect of the evidence only because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict.

plishing that task and therefore not a proper consideration."
*Mitchell,* 338 Md. at 542, 659 A.2d at 1285. In so doing, we
relied upon our reasoning in *Chambers v. State,* 337 Md. 44,
48, 650 A.2d 727, 729 (1994), in which we stated:

> With the exception of death penalty and insanity cases, the
> sole function of the jury in a criminal case in Maryland is to
> pass on whether the defendant is guilty as charged, a
> decision based on the evidence presented at trial and the
> law pertaining to the case.

We emphasized that answering the question presented by the
jury of whether Mitchell would "walk" or "be retried" would
inappropriately "invite the jury to consider punishment," out-
side of its purview, and "risks distracting the jurors from their
designated task, and from their obligation to decide the case
based on the evidence and the law." *Mitchell,* 338 Md. at 542,
659 A.2d at 1285, quoting *Chambers,* 337 Md. at 53, 650 A.2d
at 731. We further noted that the trial judge properly
exercised his discretion in answering "it's none of your con-
cern," because whether to retry a defendant after a mistrial as
a result of a hung jury was a matter for the State's Attorney
to decide, such that "[a]ny definitive answer that the court
would have given to the jury's question ... would necessarily
have been speculative." *Id.* at 542–43, 659 A.2d at 1285.

The issue we addressed and resolved in *Mitchell* is proxi-
mate to that in the present case. As in *Mitchell,* in which the
jury asked the trial judge whether the defendant would "walk"
in the event of a hung jury, the jury here asked if Sidbury
would "go free" if jurors were "hung on the degree of mur-
der." The trial judge in *Mitchell* declined to answer the
question, stating that it was "none of [their] concern," and the
Circuit Court in the present case offered a nearly identical
response, stating: "That's not an issue for you to concern
yourselves with." According to our jurisprudence and that of
many of our sister states, Judge Smith's response was appro-
priate and not an abuse of discretion. *See Starr v. Arkansas,*
297 Ark. 26, 759 S.W.2d 535, 539 (1988) (refusing to answer
questions presented by the jury regarding "the meaning of life
without parole" and "what a hung jury is," was not an abuse of

discretion, because matters of parole are not a proper consideration for the jury and "stick[ing] to the standard instructions" is appropriate), *rev'd on other grounds by Starr v. Lockhart*, 23 F.3d 1280 (8th Cir.1994); *People v. Hines*, 15 Cal.4th 997, 64 Cal.Rptr.2d 594, 938 P.2d 388, 439, 441 (1997) (declining to answer the jury's question, "[w]hat happens if the jury becomes hopelessly deadlocked," posed during deliberations in the penalty phase of a capital trial, was appropriate, because "an instruction explaining the consequences of a hung jury 'would have the potential for unduly confusing and misguiding the jury in their proper role and function in the penalty determination process' "); *see also State v. Cruz*, 218 Ariz. 149, 181 P.3d 196, 213–14 (2008) (instructing jurors during the penalty phase of a death penalty trial to continue their deliberations when asked, "If one person's decision remains unchanged against the other 11 jurors [i]s this a hung jury? If so what happens next?" did not constitute reversible error, because the instruction given did not improperly coerce or influence the jury); *State v. Gauthier*, 916 So.2d 314, 321–22 (La.Ct.App.2005) (instructing jurors to continue their deliberations and endeavor to reach a verdict was not an abuse of discretion when the jury asked whether a "hung jury (or mistrial)" was an option, because the trial court did not attempt to coerce minority members of the jury or imply that it would not accept a mistrial); *State v. Thomas*, 2001 Ohio App. Lexis 4226, at *2–6 (Ohio Ct.App.2001) (giving an instruction encouraging the jury to reach a verdict was not an abuse of discretion when the jury asked during its deliberations, "what happens on a hung jury," because the trial court may have concluded from the nature of the question that the jury was deadlocked). Both the trial judge in *Mitchell* and Judge Smith instructed regarding the responsibilities of jurors during their deliberations. Thus, we agree with our intermediate appellate court that the trial judge did not abuse his discretion, because "the jury's only task was determining [Sidbury's] guilt or innocence" and "the consequences of a 'hung' jury were irrelevant to accomplishing that task and therefore not a proper consideration" for the jury.

Sidbury, nevertheless, attempts to avoid the result mandated by *Mitchell* by highlighting factual circumstances unique to him but outside the scope of this case. Sidbury contends that it was inappropriate to refuse to answer "no" to the jury's question, because he was being held without bail and awaiting trial on an unrelated charge of attempted murder. Sidbury claims that when a reasonably certain answer is available that he would not get out of jail, and the jury has expressed concern regarding the consequences of a verdict, *Erdman* directs the trial judge to substantively answer the question.

 This argument is unavailing, because the requested instruction in *Erdman* involving the consequences of a "not criminally responsible verdict" concerned a defense raised by the defendant and at issue in the case.[6] In addition, a verdict of "not criminally responsible" has attributes of both "guilty" and "not guilty" verdicts.[7] As we noted in *State v. Garnett*, 384 Md. 466, 474, 863 A.2d 1007, 1012 (2004), "a defendant may be found both guilty and not criminally responsible for a crime so that the defendant does not stand convicted of a crime, and 'no criminal sentence may ever be entered on the guilty verdict.'" *See also Treece v. State*, 313 Md. 665, 676, 547 A.2d 1054, 1059 (1988) (emphasizing that a determination

---

6. Sidbury's reliance upon *State v. Locklear*, 363 N.C. 438, 681 S.E.2d 293, 300 (2009), in which the North Carolina Supreme Court determined that Locklear, who had been sentenced to death, was entitled to a new sentencing hearing, because the trial judge refused to instruct the jury prior to their deliberations on the consequences of a finding that he was "mentally retarded," is similarly misplaced. In that case, Locklear alleged "mental retardation," and the jury was tasked with evaluating this defense, which would have resulted in a life sentence without parole, because North Carolina had prohibited the execution of the mentally retarded by statute. *Id.* at 311–12.

7. This point was recognized by the United States Court of Appeals for the District of Columbia Circuit in *Lyles v. United States*, 254 F.2d 725, 728 (D.C.Cir.1957), *amended by United States v. Brawner*, 471 F.2d 969, 996–98 (D.C.Cir.1972), cited by this Court in *Erdman*, which determined that the trial judge did not err in instructing the jury on the consequences of a verdict of "not guilty by reason of insanity," reasoning that "[t]he issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity."

that a defendant is not criminally responsible "is not an acquittal"). In contrast, whether Sidbury was held without bail awaiting trial in an unrelated matter was not at issue in the case and does not inform the jury's task of reaching a guilty or not guilty verdict.

Even if, as Sidbury urges, the trial judge had answered "no," what would have been the bases for the answer had the jury asked for elucidation? The Circuit Court, of course, could not explicate the reasons, without risk of revealing information prejudicial to the defendant. Further, although the record indicates that the trial judge was aware of the other pending charge against Sidbury,[8] if the court was unaware, then the defendant would have to reveal prejudicial information to the court or risk having the judge answer "yes" or "I don't know" in response to the question. Not referring to matters outside the case was not an abuse of discretion in this case.

In a related argument, Sidbury, nevertheless, asserts that the question presented by the jury indicated that the jury was convinced that he had committed second degree murder, but was concerned that he would "go free" if a unanimous verdict on first degree murder could not be reached. Sidbury continues that "[t]here was no way any judge was going to release [him]" if convicted of second degree murder, because second degree murder is "punishable by a lengthy prison sentence," Sidbury had a prior conviction for first degree assault, and was on probation at the time of the shooting, such that the trial judge should have answered "no." Sidbury's interpretation of the jury's question is simply not plausible, as evidenced by the verdict sheet, which expressly required that the jury determine whether Sidbury was guilty of first degree murder, and if not, then consider whether Sidbury was guilty of second degree murder. There is no indication that Sidbury's interpretation that the jury was in agreement that he had commit-

---

8. The transcript indicates that during the jury's deliberations, the trial judge discussed with counsel scheduling regarding the attempted murder case, which was "trailing" the trial in the present case.

ted second degree murder was the only plausible one, for the question clearly states, "If the jury is *hung on the degree of murder* (first or second). . . ." (emphasis added).

 It is more plausible that the jury was divided on whether to convict of first degree or second degree murder. As we expressed in *Mitchell,* the trial judge could not have known what would happen in that instance, because the decision of whether to retry a defendant after a mistrial as a result of a hung jury is within the sole discretion of the State's Attorney. We resort to our apt statement in *Mitchell* that, "[a]ny definitive answer that the court would have given to the jury's question . . . would necessarily have been speculative." *Mitchell,* 338 Md. at 542–43, 659 A.2d at 1285.

Finally, Sidbury argues that the trial judge's response to the jury's question was ineffective, because "[j]urors are human beings" and are likely to consider the repercussions of their verdict, so that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored," quoting *Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476, 485 (1968). In *Bruton,* the Supreme Court considered whether, in a joint trial of Evans and Bruton for "armed postal robbery," the introduction of Evans' confession that inculpated Bruton was unfairly prejudicial, despite the trial court's limiting instruction that the confession was only to be considered as evidence in the case against Evans. The Court determined that because Evans did not testify, the introduction of Evans' confession added substantial weight to the government's case against Bruton in a form not subject to cross-examination, in violation of Bruton's Sixth Amendment right of cross-examination. *Id.* at 137, 88 S.Ct. at 1628, 20 L.Ed.2d at 485. The Court's discussion regarding the jury's inability to follow the trial judge's limiting instruction is neither factually nor legally apt, because the factual predicates of *Bruton* are not present

at all in the present case so that its application is totally unwarranted here.[9]

Thus, the trial judge did not abuse his discretion in responding, "[t]hat's not an issue for you to concern yourselves with," when faced with a question posed by the jury during deliberations concerning the consequences of a hung jury.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

**9.** Other cases Sidbury refers us to, including *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), *McKnight v. State*, 280 Md. 604, 375 A.2d 551 (1977), *Behrel v. State*, 151 Md.App. 64, 823 A.2d 696 (2003), *Coffey v. State*, 100 Md.App. 587, 642 A.2d 276 (1994), and *Jones v. State*, 86 Md.App. 204, 586 A.2d 55 (1991), involving the insufficiency of limiting or curative instructions when information prejudicial to the defendant has been revealed to the jury, are similarly inapposite.